UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES STURGIS,

                              Petitioner

                                                    DECISION AND ORDER

-vs-

                                                    04-CR-6140 CJS

UNITED STATES OF AMERICA,

                              Respondent

_____

APPEARANCES

For Petitioner:        James Sturgis, *Pro se*
                       F.C.I. Elkton
                       P.O. Box 10
                       Elkton, Ohio 44432

For Respondent:        Christopher Taffe, Esq.
                       Assistant United States Attorney
                       100 State Street, Room 620
                       Rochester, New York 14614

INTRODUCTION

Now before the Court is the pro se petitioner's application to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  For the reasons set forth below, the application is denied.

28 U.S.C. § 2255

Section 2255 provides, in relevant part, as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such

1

sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. The Court may dismiss a section 2255 petition without conducting a hearing if the petition and the record "conclusively show" that petitioner is not entitled to relief. 28 U.S.C. § 2255. As will be seen below, Petitioner's arguments and submissions do not merit an evidentiary hearing.

## BACKGROUND

For purposes of the instant application, it is sufficient to note the following facts. The Court first turns its attention to the circumstances leading to Petitioner's September 15, 2004 plea to, and his January 24, 2005 sentence for, the crime of possession with intent to distribute cocaine base, which plea and sentence are the subjects of this petition.

On December 4, 1987, Petitioner James Sturgis ("Petitioner") was indicted by a Grand Jury in Monroe County, New York, Indictment 886/87, for the crime of Criminal Possession of a Controlled Substance in the Third Degree, in violation of New York Penal Law ("Penal Law") § 220.16(1), which provides, in relevant part: "A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it." In that regard, the indictment alleged that on or about October 16, 1987, Petitioner possessed heroin with the intention of selling it.[1]

---

[1] In the same indictment, Petitioner was also indicted for Criminal Possession of a Controlled Substance (heroin) in the Seventh Degree in violation of Penal Law § 220.03, Criminal Possession

2

On March 10, 1988, Petitioner was indicted by a Grand Jury in Monroe County, New York, Indictment 182/88, for the crime of Criminal Possession of a Controlled Substance in the Third Degree, in violation of Penal Law § 220.16(1) for possessing, with intent to sell, cocaine and heroin.  In that regard, the indictment alleged that on or about December 2, 1987, Petitioner possessed cocaine and heroin with the intention of selling the same.[2]

On June 23, 1988, Petitioner pled guilty to Attempted Criminal Possession of Controlled Substance in the Third Degree, in satisfaction of Indictment 886/87.  The same day, Petitioner also pled guilty to Attempted Criminal Possession of a Controlled Substance in the Third Degree, in satisfaction of Indictment 182/88.  On September 8, 1988, Petitioner was sentenced as a second felony offender to an indeterminate sentence of imprisonment of three-to-six years on each conviction, with the sentences to run concurrently.

On January 22, 1991, Petitioner was convicted, upon a plea of guilty, of Conspiracy to Distribute Heroin, a felony.  He was subsequently sentenced to a term of imprisonment of 24 months.

In addition, Petitioner has numerous other convictions, including convictions for attempted possession of a controlled substance, operating a vehicle while license

---

of a Controlled Substance (cocaine) in the Seventh Degree in violation of Penal Law § 220.03, and two counts of Criminal Possession of a Hypodermic Instrument in violation of Penal Law § 220.45.

[2]In the same indictment, Petitioner was charged with Criminal Possession of a Controlled Substance (cocaine and heroin) in the Seventh Degree, in violation of Penal Law § 220.03.

suspended, criminal possession of a controlled substance in the seventh degree, promoting prison contraband, criminal possession of a weapon in the third degree, and aggravated unlicensed operation of a motor vehicle, all of which pre-date the instant offense of conviction.

Turning now to the subject offense, on August 11, 2004, Petitioner was stopped by police in Brighton, New York, for driving without a seatbelt. Police arrested Petitioner after discovering that he was driving with a suspended license. Subsequently, police discovered 45 baggies of crack cocaine in Petitioner's car, having an aggregate weight of 6.530 grams, and over $800 in cash. Petitioner subsequently gave a statement to police, in which he admitted that he possessed the crack cocaine with the intent to distribute it. On September 15, 2004, in the United States District Court for the Western District of New York, Petitioner waived indictment and pled guilty before the Honorable Michael A Telesca, United States District Judge, pursuant to a written plea agreement, to a one-count information charging him with possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), for which the maximum statutory sentence was thirty years. Specifically, Petitioner admitted that on or about August 11, 2004, he knowingly, intentionally, and unlawfully possessed 45 plastic bags of cocaine base, with the intent to distribute them in the Western District of New York. (Plea Agreement at 4). It is notable that, as part if the plea agreement, Petitioner was allowed to plead to an information with an unspecified drug quantity. Otherwise, based on the weight of the cocaine base (6.53 grams), and pursuant to 21 U.S.C. § 841(b)(1)(B), Petitioner would have

been subject to a mandatory minimum term of imprisonment of ten years and a maximum of life imprisonment.

During his plea, Petitioner stated that he had reviewed the plea agreement with his attorney, Assistant United States Public Defender Roxanne Mendez-Johnson ("Mendez-Johnson"), and that Mendez-Johnson had explained the agreement to him. (Plea Minutes at 7).  Petitioner further stated that no one had "threatened or forced" him to enter into the plea agreement. (*Id.*).   Judge Telesca found, based on Petitioner's answers to questions put to him by the Court, that Petitioner was "fully competent and capable of entering an informed plea," and that Petitioner was "aware of the nature of the charges and the consequences of his plea of guilty." (*Id.* at 9). During the plea allocution, Petitioner also agreed that he possessed all 45 bags of cocaine base with the intent of distributing them:

> THE COURT: I'm going to ask the United States Attorney to give me a summary of the evidence that they have against you.  Evidence that they would introduce if there were a trial in this case.  I'll ask you to listen carefully, because after he gives me the summary I'll ask you if what he states is correct.  May I hear from the Government?
>
> MR. TAFFE: Yes, your Honor.  If the matter proceeded to trial, the evidence would show on or about August 11[th] of this year within the Western District of New York in Brighton the Defendant was found with 45 plastic bags of cocaine base.  The Defendant understands that he possessed it with the intent to transfer or distribute it to another and that all occurred within the Western District of New York.
>
> THE COURT: Is what he states correct?
>
> THE DEFENDANT: Yes, sir.

(Plea Transcript at 7).

As part of the plea agreement, Petitioner acknowledged having three prior felony drug trafficking convictions, which included the two aforementioned New York State convictions for Attempted Criminal Possession of a Controlled Substance in the Third Degree, as well as the federal conviction for Conspiracy to Distribute Heroin.  Based on these prior convictions, Petitioner agreed that, under the advisory Federal Sentencing Guidelines, he was a Career Offender, Guideline § 4B1.1(b)(B), with a criminal history category VI.  In that regard, § 4B1.1(b)(B) states, in relevant part:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offence; and (3) the defendant has at least *two prior felony convictions* of either a crime of violence or a *controlled substance offense*.

(Emphasis added).  The Sentencing Guideline Manual defines a " controlled substance offense" as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Guideline § 4B1.2(b).

Petitioner further agreed that, under the sentencing guidelines, his offense level was 34, although, under the agreement, the Government agreed not to oppose a three-level reduction for acceptance of responsibility, bringing Petitioner' s adjusted offense level down to 31.  The parties further agreed that with a offense level of 31 and a

criminal history of VI, Petitioner's sentencing range under the advisory guidelines was 188-235 months, and Petitioner agreed that he would not appeal or collaterally attack a sentence within that range.

On November 8, 2004, Respondent filed a motion for a downward departure, based on "Extraordinary Medical Circumstances and a Convergence of Factors." In that regard, Petitioner argued that the court should impose a sentence below the recommended guideline range, based on his unusual family history, and on the fact that he suffered from high blood pressure, liver disease, enlarged lymph nodes, edema, degenerative disc disease, umbilical hernia, asthma, sleep apnea, enlarged heart, arthritis, obesity, anxiety and depression.

Subsequently, Judge Telesca transferred the case to the undersigned. On January 24, 2005, Petitioner appeared before the Court for sentencing. At that time, the Court indicated that a downward departure was not warranted under the advisory guidelines. The Court reviewed Petitioner's criminal record, and remarked, "[t]o say it's lengthy is an understatement . . . . [I]f ever there was anyone who could be characterized as a career offender in my mind, it's you." (Sentencing Minutes at 11, 13). Subsequently, the Court sentenced Petitioner to, *inter alia*, a term of imprisonment of 188 months. (*Id*. at 20). Despite receiving a sentence that was within the range contemplated by the Plea Agreement, Petitioner filed an appeal. However, on September 7, 2005, the United States Court of Appeals for the Second Circuit dismissed the appeal, finding that "the Appellant knowingly and voluntarily

waived his right to appeal." (See, Second Circuit Mandate, Docket [#20], 05-0581-cr).

On December 20, 2006, Petitioner, proceeding *pro se*, filed a petition [#24] pursuant to 28 U.S.C. § 2255. The petition alleged that: 1) the court erred by accepting Petitioner's guilty plea without first having a competency examination, which it should have done based on Petitioner's history of substance abuse and based on the fact that Petitioner was taking various prescription medications; 2) Petitioner's two prior state court felony convictions under New York Penal Law § 220.16 were not "controlled substance offenses"; 3) Petitioner's two prior state court felony convictions under New York Penal Law § 220.16 should have been treated as a single conviction for purposes of sentencing; 4) the 45 bags of crack cocaine seized from Petitioner should not have been used to calculate his base offense level, because the drugs were for his personal use; and 4) trial and appellate counsel were ineffective, because they failed to request a competency hearing, failed to investigate Petitioner's prior state court drug convictions, and failed to argue that the drugs seized from Petitioner were for his personal use.

On February 5, 2007, Petitioner filed an Amended Petition, which is now the operative petition in this action. The Amended Petition essentially re-casts all of the allegations in the original petition as claims for ineffective assistance of counsel. In addition, the Amended Petition alleges that trial counsel coerced Petitioner into pleading guilty. More specifically, Petitioner alleges that during plea negotiations, his attorney failed to properly investigate his criminal history, which resulted in him being

mistakenly classified as a career offender pursuant to Guideline § 4B1.1(b)(B). According to Petitioner, his attorney was deficient because she failed to discover that his two prior state-court convictions for Attempted Criminal Possession of Controlled Substance in the Third Degree involved "simple possession," not possession with intent to distribute.[3]  He also alleges that his attorney was ineffective for failing to object to the calculation of his base offense level under the advisory guidelines, on the grounds that the drugs which he possessed were for his own consumption, not for distribution.  Further, he alleges that his attorney had a conflict of interest, because of which, she "threatened and coerced" him into pleading guilty, by telling him that he would "definitely" receive a sentence of life imprisonment if convicted after trial. (Amended Petition at 16).  And finally, he alleges that his attorney was ineffective for failing to request a competency hearing, based upon Petitioner's past drug use. (Amended Petition at 7) ("[A] competency hearing should have been requested by trial counsel after knowing in advance that defendant was a substance abuser and had consumed prescribed medications on the date he was coerced and threatened to enter [sic] by trial counsel.").[4]

## DISCUSSION

---

[3] He also argues that those two convictions were effectively "consolidated," such that they amount to only one conviction.  However, even that were true, which it is not, Petitioner's argument is irrelevant, since he clearly has at least one other controlled substance offense, namely, the federal conviction for conspiracy to distribute heroin.  Consequently, the relevant issue is whether either of Petitioner's state convictions is also a "controlled substance offense."

[4] In his reply brief, Petitioner additionally argues that his Appellate Counsel was likewise ineffective for failing to raise these arguments on direct appeal.

*The Petition is Untimely*

The Court finds at the outset that Petitioner's application must be denied as untimely.[5]  Motions under 28 U.S.C. § 2255 "may be filed within one year from the date on which the judgment of conviction becomes final," and "a judgment of conviction becomes final for purposes of § 2255 when the Supreme Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Burrell v. U.S.*, 467 F.3d 160, 163-164 (2d Cir. 2006) (citations and internal quotation marks omitted), *cert. den.* 127 S.Ct. 2031 (2007).  A petition for review on certiorari must be filed "within 90 days after entry of the judgment." U.S. Sup. Ct. Rule 13.

Here, the Second Circuit entered its judgment dismissing Petitioner's direct appeal on September 7, 2005.  Petitioner then had 90 days, or until December 6, 2005, to file a petition for review on certiorari.  Petitioner did not petition for such review, and accordingly, his conviction became final on December 6, 2005.  Thereafter, Petitioner had one year, or until December 6, 2006, to file a motion under 28 U.S.C. § 2255.  However, Petitioner did not file the instant action until December 20, 2006, which is two weeks beyond the one-year deadline.   Nor can Petitioner benefit from the prison "mailbox rule," since his application was signed and dated on December 11, 2006, beyond the limitations deadline.

Petitioner contends that the limitations period should be equitably tolled.  However, there is no merit to Petitioner's argument.  To qualify for equitable tolling, a "petitioner must

---

[5]*See, Weaver v. United States of America*, No. 98-CV-639, 1998 WL 247471 at * 1 (N.D.N.Y. May 8, 1998) (" Although the Government did not raise the issue, the court must consider whether the instant petition is barred by the applicable statute of limitations." ), *aff' d* 195 F.3d 123 (2d Cir. 1999), *cert denied*, 529 U.S. 1094 (2000).

establish that 'extraordinary circumstances prevented him from filing his petition on time,' and that he 'acted with reasonable diligence throughout the period he seeks to toll.'" *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004) (*quoting Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).  In this case, on February 12, 2007, the Court issued a Decision and Order [#25], directing Petitioner to explain how his petition was timely.  In response, on March 1, 2007, Petitioner filed an affidavit, in which he essentially claims that his attorney, Mendez-Johnson, misled him into believing that she had filed a petition for certiorari to the United States Supreme Court, and that, after waiting more than a year without hearing anything from the Supreme Court, he decided to take matters into his own hands and file a Section 2255 petition.  Specifically, he states that in September 2005, he asked Mendez-Johnson to file a petition for certiorari to the United States Supreme Court.  He further states that,

> because counsel informed Petitioner as of early December, 2006, that she has not yet heard from the Supreme Court on her filings, then Petitioner assumed that he actually did not have to do anything until he hears again from counsel.  The only reason Petitioner went ahead and filed the pending section 2255 motion which was dated December 11, 2006, was because he grew tired of waiting for counsel and the Supreme Court to give him the go-ahead.

(Petitioner's Timeliness Response [#27] at 2-3).  This attempt to establish "extraordinary circumstances" is wholly incredible.  However, more importantly, it is flatly contradicted by Petitioner's earlier sworn statements, contained in both his original Section 2255 Petition [#21] and his Amended Petition [#36], in which he stated that, except for his direct appeal to the Second Circuit, he had not taken any further appeal or filed "any petitions, applications, or motions with respect to this judgment in any federal court." (*Id*. at 2). Accordingly, the Court declines to give any weight to Petitioner's belated contention that

he was misled into believing that a petition for certiorari had been filed.[6]  Moreover, even assuming that Petitioner could establish extraordinary circumstances, which he cannot, the Court finds that he did not act with reasonable diligence.  Accordingly, this action must be dismissed as untimely.

Lastly, on this point, even assuming *arguendo* that Petitioner's original § 2255 petition was somehow timely, that petition contained no allegation that defense counsel had threatened or coerced him into pleading guilty.  Petitioner did not make that allegation until he filed his proposed Amended Petition on February 5, 2007.  The original petition gave no hint of such a claim, and accordingly, Petitioner's claim that defense counsel coerced him into pleading guilty would not relate back to the filing of the original petition. *See, Fama v. Commissioner of Correctional Services*, 235 F.3d 804, 815 (2d Cir. 2000) ("In determining whether the claim arises out of the same conduct or occurrence [set forth in the original pleading], the pertinent inquiry is whether the original complaint gave the defendant fair notice of the newly alleged claims.") (citation and internal quotation marks omitted).

*The Ineffective Assistance of Counsel Claims Lack Merit*

Further, even assuming that Petitioner's claims were timely, they nevertheless lack merit.  To establish ineffective assistance of counsel, petitioner must meet two requirements:

---

[6]Although the Court need not, and does not, rely on this piece of information in reaching its decision, it notes that on June 25, 2008, a member of the Court's staff contacted Mendez-Johnson by telephone, and Mendez-Johnson denied that she had told Petitioner in September 2005 that she would file a petition for certiorari, and further denied that she had spoken to Petitioner in December 2006.

First, he must demonstrate that his attorney's performance 'fell below an objective standard of reasonableness' under the 'prevailing professional norms.' *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, he must show a 'reasonable probability' that absent counsel's error, the outcome of the proceeding would have been different. *Id*. at 687-88.

*Vadas v. U.S.*, 527 F.3d 16, 20 (2d Cir. 2007) (footnote omitted).   Applying this standard to the facts of the instant case, the Court finds no merit to Petitioner's claims of ineffectiveness.

*Petitioner Has Not Shown That He Was Coerced Into Pleading Guilty*

At the outset, the Court finds that counsel was not ineffective for advising Petitioner to plead guilty, or for allegedly "coercing" him to do so.  In that regard, as mentioned above, Petitioner alleges that his attorney improperly pressured him into pleading guilty under the plea agreement, by advising him that unless he did so, the Government would indict him for possessing the entire 6.53 grams of cocaine base, and that if he were convicted, he would receive a life sentence, pursuant to 21 U.S.C. § 841(b)(1)(B).  However, this claim of ineffective assistance of counsel is contradicted by Petitioner's sworn plea allocution, in which he stated that he understood the plea agreement and the rights that he was giving up by pleading guilty, and in which he denied that he was threatened or coerced into pleading guilty. *See, U.S. v. Applebaum*, No. 94 CR 209 (AGS), 1995 WL 723348 at *10 (S.D.N.Y. Dec. 7, 1995) ("It is well settled that a defendant's statements at a plea allocution carry a strong presumption of veracity, and are conclusive absent credible reasons justifying departure from their apparent truth.") (citations and internal quotation marks omitted), *aff'd* 101 F.3d 686

(2d Cir. 1996).   Nor has Petitioner shown that counsel's advice or professional opinion amounted to coercion.   *See, Id.* ("[W]here, as here, a lawyer recommends in the exercise of his professional judgment, that his client plead guilty, and the client relies upon that advice, the client can not later validly attack his guilty plea on the basis of attorney coercion.") (citation omitted); *see also, U.S. v. Juncal*, 245 F.3d 166, 172 (2d Cir. 2001) ("Nor does defense counsel's blunt rendering of an honest but negative assessment of appellant's chances at trial, combined with advice to enter the plea, constitute improper behavior or coercion that would suffice to invalidate a plea."). Additionally, Petitioner has failed to show that counsel's recommendation to plead guilty was so erroneous as to amount to ineffective assistance of counsel. *See, U.S. v. Applebaum*, 1995 WL 723348 at * 10.   In that regard, by pleading guilty to the information, Petitioner was able to limit the maximum possible sentence to 30 years, as opposed to a sentence of life imprisonment that he otherwise could have faced, pursuant to 21 U.S.C. § 841(b)(1)(B), if he had been indicted.   Moreover, by pleading guilty Petitioner received a three-point reduction of his offense level for acceptance of responsibility.   Accordingly, Petitioner has not shown that his attorney's advice to plead guilty constituted ineffective assistance.

### Counsel Was Not Ineffective For Failing to Argue That Drugs Were For Petitioner's Personal Use

Petitioner contends that his counsel was ineffective for failing to challenge the calculation of his base offense level, with regard to the quantity of cocaine base that he possessed with the intent to distribute.   Specifically, Petitioner alleges that,

because of his history of cocaine addiction, his attorney should have argued that all of the drugs he possessed were intended for his own consumption. (*See*, Petitioner's Motion to Amend [#24] at 9) ("[T]he evidence clearly demonstrated that the drugs Defendant [was] arrested for were strictly for personal use."). On this point, Petitioner is correct that, "in calculating the quantity of drugs relevant for purposes of sentencing under 21 U.S.C. § 841, any fractional quantity of drugs intended for personal use must be excluded." *U.S. v. Williams*, 247 F.3d 353, 358 (2d Cir. 2001). However, in this case, during his plea allocution, Petitioner stated under oath that he possessed the entire 45 bags of cocaine base with the intention of distributing them. Consequently, Petitioner cannot now contradict those statements to prove that his attorney was ineffective. *See, U.S. v. Hernandez*, 242 F.3d 110, 114 (2d Cir. 2001) ("[H]e fails on the merits because his factual assertions regarding his counsel's alleged ineffectiveness simply contradict his sworn statements at the plea allocution.").

*Counsel Was Not Ineffective For Failing to Request A Competency Exam*

Petitioner argues that counsel should have asked the Court to order a competency examination, based on Petitioner's history of drug abuse and the fact that he was taking certain prescription medications. In that regard,

> [t]he test for competence is "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has a 'rational as well as factual understanding of the proceedings against him.' " *Godinez[v. Moran]*, 509 U.S. at 396 (quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)). There are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." *Drope v. Missouri*, 420 U.S. 162, 180, 95

S.Ct. 896, 43 L.Ed.2d 103 (1975). The court may consider many factors to assess competency, including: " evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." *Drope*, 420 U.S. at 180. The court's own observations of the defendant are also relevant to its determination, though observations alone " cannot be relied upon to dispense with a hearing on that very issue" if there is substantial other evidence that the defendant is incompetent. *Pate v. Robinson*, 383 U.S. 375, 386, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *see also United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir.1986) (" [D]eference is owed to the district court's determinations based on observation of the defendant during the proceedings." ). A " failure by trial counsel to indicate that the defendant had any difficulty assisting in preparation or in comprehending the nature of the proceedings ' provides substantial evidence of the defendant's competence.' " *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir.1995) (*quoting Vamos*, 797 F.2d at 1150); *see also Drope*, 420 U.S. at 177, n. 13 (stating counsel's judgment of competence is " unquestionably a factor which should be considered." ).

*Davila v. U.S.*, No. 07-CV-1320 (JBW), 2008 WL 906691 at * 12 (E.D.N.Y. Mar. 31, 2008).       Here, it is undisputed that Petitioner has a history of abusing illegal drugs, including cocaine and heroin.  However, at the time of his plea in this case, on September 15, 2004, Petitioner had been in custody for over a month, and there is no indication that he used illegal drugs during that time.  Further, although at the time of the plea Petitioner was suffering from a variety of ailments, including heart disease, asthma, hypertension, and depression, for which he was taking prescribed medications including Albuterol inhaler, Clonidine HCL (hypertension), aspirin, Advair inhaler, Trazodone (anti-depressant), Furosemide (a diuretic), and Wellbutrin (anti-depressant), there is nothing to suggest that such medications rendered Petitioner incompetent.  To the contrary, during the plea and at sentencing, Petitioner behaved normally and responded appropriately to questions put to him by the Court.  During the plea, Judge

Telesca, who was personally familiar with Petitioner,[7] observed Petitioner's demeanor and specifically found that Petitioner was "fully competent and capable of entering an informed plea," and that Petitioner was "aware of the nature of the charges and the consequences of his plea." (Plea Transcript at 9). At sentencing, the undersigned read aloud a lengthy and thoughtful letter that Petitioner had sent to the Court, in which he discussed the problems that he had experienced in his life, his faith in God and his plans to improve his life. (Sentencing Transcript at 2-5). The letter gave the Court no reason to question Petitioner's competence. Later during sentencing, Petitioner spoke lucidly about his concerns regarding medical treatment in prison, and he asked the Court for leniency. (*Id.* at 9-10). Again, there was nothing in Petitioner's speech or demeanor to indicate that he was incompetent. Nor does Petitioner claim that there was anything unusual about his demeanor or behavior that would have caused either his attorney or the Court to question his competency. Instead, Petitioner argues that his attorney should have presumed that Petitioner was not competent, based solely on his past drug usage and the fact that the was taking prescription medications for his medical problems. The Court disagrees and, accordingly, Petitioner's claim of ineffective assistance of counsel, based on the alleged failure to request a competency hearing, is denied.

> *Counsel Was Not Ineffective For Failing to Challenge the Career Offender Classification*

---

[7] *See*, Plea Transcript at 6 ("[Y]ou're no stranger to the system, you've been before me a number of times.").

Petitioner also alleges that counsel was ineffective for failing to challenge the sentence calculation under the advisory sentencing guidelines, which designated him as a career offender under Guideline § 4B1.1(a).  Specifically, Petitioner alleges that his attorney failed to investigate his convictions for Attempted Criminal Possession of a Controlled Substance in the Third Degree, pursuant to  Penal Law § 220.16, and that if she had, she would have discovered that those convictions were not " controlled substance offenses."   In this regard, Petitioner relies on the fact that, although he was indicted for violating Penal Law § 220.16(1), which clearly would qualify as a controlled substance offense, the Judgments of Conviction state only that he was convicted of "Att CPCS 3rd," without specifying a particular sub-section of Penal Law § 220.16.  On this point, Petitioner cites *U.S. v. Green*, 480 F.3d 627 (2d Cir. 2007), a case involving facts very similar to the subject matter, in which the Second Circuit held, *inter alia*, that the district court was not entitled to rely on the indictment in determining that the defendant had been convicted of Attempted Criminal Possession in the Third Degree in violation of Penal Law § 220.16(1).

However, the Court finds that Petitioner's reliance on *Green* is misplaced.  In that regard, the Court notes, at the outset, that when applying the first *Strickland* prong, courts must be

> mindful of the diversity of the bar and the variety of approaches effective attorneys might employ when dealing with a particular set of facts. To give appropriate deference to counsel's independent decisionmaking, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Another familiar risk is that, in the illuminating light of hindsight, we might look back and project ex post knowledge of consequences on the attorney's ex ante selection of one path among the many available to him. To

18

> counteract this inclination to evaluate counsel's performance against insight
> gained only through the passage of time, *Strickland* requires that "[w]hen
> assessing whether or not counsel's performance 'fell below an objective
> standard of reasonableness ... under prevailing professional norms,' " we
> must "consider the circumstances counsel faced at the time of the relevant
> conduct and ... evaluate the conduct from counsel's point of view." [*Davis v.
> Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) (*quoting Strickland*, 466 U.S. at
> 688-89, 104 S.Ct. 2052) (first ellipsis in original).

*Parisi v. U.S.*, 529 F.3d 134, 141 (2d Cir. 2008). Consequently, an attorney is not ineffective for failing to anticipate a change in the law, unless such failure was objectively unreasonable. *See, Id.* (" Under *Strickland*, we must consider the circumstances counsel faced at the time of the relevant conduct, and [Petitioner] has not persuaded us that his attorney erred in not anticipating such a development in the law.") (citation omitted).

Considering the applicable law, the Court finds that defense counsel was not ineffective for failing to challenge Petitioner's classification as a career offender. First, the Court notes that *Green* was not decided until March 13, 2007, which was more than two years after the events at issue in this case. Additionally, *Green* is distinguishable since, unlike Petitioner, the defendant in *Green* did not agree, as part of his plea, that he was a career offender. Moreover, unlike the instant case, in *Green* the government was unable to produce a judgment of conviction. *U.S. v. Green*, 480 F.3d at 630 (" The government was unable, however, to obtain from the New York court . . . a formal judgment."). Furthermore, in this case, Petitioner's classification as a career offender, based in part on his convictions under PL § 220.16, was consistent with the Second Circuit's decision in *U.S. v. King*, 325 F.3d 110 (2d Cir. 2003), *cert.*

*denied*, 540 U.S. 920, 124 S.Ct. 313 (2003), which also involved New York Penal Law § 220.16.  Specifically, in *King*, as here, the defendant had a prior conviction for Attempted Possession of a Controlled Substance in the Third Degree in violation of Penal Law § 220.16. *Id*. at 112.  At sentencing, the district court held that this prior conviction constituted "a serious drug offense" within the meaning of 18 U.S.C. § 924(e).  On appeal, the defendant raised the exact same argument as the one raised by Petitioner, namely, that since the certificate of conviction did not reference a particular sub-section of PL § 220.16(1), there was no way to tell if his conviction involved possession with the intent to distribute.  However, in affirming the district court's ruling, the Second Circuit rejected the defendant's argument and held, *inter alia*, that the district court properly relied on the indictment in determining that the defendant's conviction involved the intent to distribute. In that regard, the court wrote:

> The first count of the New York State indictment against King charged him with
>> the crime of CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE IN THE THIRD DEGREE in violation of Section 220.16(1) of the Penal Law of the State of New York committed as follows: The said ANTHONY KING ... knowingly and unlawfully possessed a narcotic drug with intent to sell it, to wit: cocaine.
>
> People v. King, No. 92/0141 (N.Y. County Court, Indictment). King pleaded guilty to a reduced charge of "attempted" criminal possession of a controlled substance in the third degree. Although King suggests that his plea was ambiguous and may have related to some subsection of § 220.16 other than subsection (1)-and hence might not have admitted intent to sell-there is nothing in the record to support this suggestion. Only count one of the indictment charged King with cocaine possession in the third degree, and that count alleged that he violated § 220.16(1). Although two additional counts charged King with cocaine possession, those counts charged possession only in lesser degrees. *In light of the facts that the certificate of King's conviction shows his plea of guilty to attempted possession in the third degree, that only*

> *one count of the indictment charged King with possession in the third degree,*
> *and that that count cited subsection (1) of § 220.16, we conclude that King's*
> *conviction was properly interpreted as one for attempt to violate 220.16(1).*

*U.S. v. King*, 325 F.3d at 114 (emphasis added).  Similarly, here the judgments of conviction showed that Petitioner pleaded guilty to "Att CPCS 3rd", and the relevant indictments showed that Plaintiff was indicted specifically for violating Penal Law § 220.16(1). Therefore, pursuant to *King*, it was proper to interpret Petitioner's convictions as involving the attempt to violate Penal Law § 220.16(1).  Additionally, as stated before, Petitioner agreed as part of his plea that his convictions under Penal Law § 220.16 were "controlled substance offenses."  Accordingly, counsel's failure to challenge those convictions as being controlled substance offenses, within the meaning of USSG § 4B1.1, was not objectively unreasonable.

### Appellate Counsel Was Not Ineffective

Lastly, Petitioner contends that Appellate Counsel was ineffective, for failing to raise the same issues discussed above on his direct appeal, and for instead arguing that Petitioner should have received a downward departure based on his medical circumstances. (*See*, Petitioner's Traverse/Reply at 14) ("Appellate counsel overlooked the stronger arguments based on his lack of investigation and raised frivolous issues regarding Petitioner's mental and physical health pursuant to U.S.S.G. § 5H1.4 which this [sic] issue is discretionary and if the issue was meritorious this Court would have granted trial counsel's downward departure motion.").  In that regard, it is well settled that,

> [i]n attempting to demonstrate that appellate counsel's failure to raise a . . .
> claim constitutes deficient performance, it is not sufficient for the habeas
> petitioner to show merely that counsel omitted a nonfrivolous argument, for
> counsel does not have a duty to advance every nonfrivolous argument that

could be made. *See Jones v. Barnes*, 463 U.S. 745, 754, 103 S.Ct. 3308, 3314, 77 L.Ed.2d 987 (1983). However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker. As the Seventh Circuit has held: 'When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.' *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1985).

*Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (some citations omitted).  As already discussed, the issues that Petitioner believes should have been raised on appeal lack merit.  Accordingly, the Court cannot find that the issue that counsel raised on appeal was clearly and significantly weaker.  Therefore, Petitioner's claim of ineffective assistance of appellate counsel is denied.

CONCLUSION

For the foregoing reasons, Petitioner's application is denied, and this action is dismissed.  Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right.

So Ordered.

Dated:     Rochester, New York
           July 15, 2008

                              ENTER:


                              /s/ Charles J. Siragusa_____
                              CHARLES J. SIRAGUSA
                              United States District Judge

22